Graves, J.:
This is a certiorari by Johnston to reverse a judgment given against him as garnishee in the circuit court for the county of Manistee.
Delbridge and Hubbell sued one Leitch in the circuit court, and while that suit was pending, Delbridge made affidavit, June 22, 1875, that he had good reason to believe, and.did believe, that Johnson had money in his hands belonging to Leitch, and was indebted to Leitch, and prayed that garnishee process might issue. A garnishee precept was thereupon issued against Johnson, requiring him to appear on the 3d of August, 1875, and make disclosure in writing and under oath. The writ was directed to the sheriff, and he was ordered to make due return on the 3d of August, 1875. Instead of being put into the hands of an officer for service, the writ was given to one Butler, a clerk in the office of the attorneys for Delbridge and Hubbell, and it was returned to the court with the following endorsement on it:
“Manistee, June 22, 1875.
“I hereby admit due personal service on me of the within writ of garnishment.
“(Signed). J. A. Johnson.”
*415 * There was no official action whatever in connection with service on Johnson. He paid no attention to the process, and on the strength of this endorsement on the writ alone, and without any thing official to show service, or any affidavit or oath of service, or any proof concerning the authenticity of the endorsement, the attorneys for Delbridge and Hubbell on the 3d of September, 1875, entered Johnson’s default for want of appearance and disclosure, and on the 28th of February, 1876, made the default absolute and caused interlocutory judgment to be entered, with an order for assessment of damages by the court; and judgment having passed in favor of Delbridge and Hubbell against Leitch in the principal suit for four hundred- and twenty-eight dollars and twenty-six cents, final judgment was forthwith entered against Johnson for the like amount, together with costs against him, which were afterwards taxed at some twenty dollars. Subsequently Johnson moved the court to set aside the judgment, and the result was, that the motion was refused upon the remission by Delbridge and Hubbell of all but one hundred and seventy-one dollars of the four hundred and twenty-eight dollars and twenty-six cents, and on the 3d of July, 1876, execution was issued against Johnson for that sum, and also twenty dollars costs.
Dpon the hearing, an elaborate argument was made against the constitutionality of some of the provisions of the garnishee law, but there is no occasion to examine that subject.
The judgment against Johnson was clearly erroneous, for the reason that the court had no evidence before it that any service had been made upon him. Before default can be taken there must be positive and sufficient evidence in court of due service, and no substantial defect in that respect .can be cured by subsequent knowledge of the fact. If it is not shown to the court that the party has been duly notified, it cannot appear to it that he is in default. — Eaton v. Eaton, 33 Mich., 305; Denison v. Smith, 33 *Mich., 155; Litchfield v. Burwell, 5 How. Prac., 341; Executors of Doolittle v. Executors of Ward, 5 J. R., 359; 1 Burrill’s Prac., 370.
The writing purporting to be an admission of service here by Johnson was no evidence, by itself, to authorize the entry *416 of his default for not appearing. The court could not ¿now whether the signature was that of Johnson or not. It could not take judicial notice of the fact. It may take notice of certain official acts, and of the signatures of its own officers, including attorneys in particular cases. But it cannot do this in respect to many transactions. In order to do it the signature must occur in connection with some kind of official function. Here was nothing but a private writing, unsustained by any oath or legal badge to accredit it. If a judgment in one case can be given lawfully for want of appearance, without any showing to the court by oath or official certificate that any service has been made, the same pratice may be pursued in others, and a door is at once opened for unlimited mischief and injustice. Again, without considering whether it is necessary or not under this law that the precept should be served by some officer commissioned to serve process or by some person regularly deputed to make the particular service, it is certainly true that it is far better and safer to entrust service to such persons than to others. Had that been done in this instance, it is nearly certain that the vexation and expense which have followed would have been avoided.
The facts seem to warrant a remark upon another feature.
Judgment passed against Johnson on the assumption that he admitted his liability over in the case. He was not principal debtor, and he owed no duty in that character to plaintiffs, and in case the plaintiffs had shown themselves entitled to judgment against him on his default, there could have been no justice in visiting him with the costs they incurred in carrying! the action to a decision, requiring him to pay them instead of their delinquent debtor, and the court is of opinion that in these proceedings against *garnishees, when'; the garnishee makes no active opposition and allows [1] the case to go on by suffering default, it is not the design of i] the law to inflict any costs against him up to the judgment. ''
The judgment must be reversed, with the costs of this court and the proper costs of Johnson in the court below in the attempt there made to have the judgment against him set aside.
The other justices concurred.